## Berkey v. Johnson

*John M. Cascio,* for plaintiff.
*Samuel D. Clapper,* for exceptant.
*Frank A. Orban Jr.,* for purchaser.
*Robert W. Critchfield,* for sheriff.

SHAULIS, *P.J.,* March 23, 1987 — On October 9, 1975, Charles P. Johnson Jr., executed and delivered a mortgage in favor of plaintiff, Clammer B.

Berkey Jr., encumbering premises situate in Shade and Quemahoning townships and securing a note in the amount of $80,000. Charles J. Johnson Jr., conveyed said premises on January 17, 1980, to himself and Martha C. Johnson, the other defendant named herein. Plaintiff filed a mortgage foreclosure action against defendants and prosecuted the same to default judgment. The Shade and Quemahoning township parcels were purchased at sheriff's sale on July 18, 1986, by Edward L. Berkey Jr. and Linda D. Berkey, husband and wife, for $89,000.

The sheriff posted his proposed schedule of distribution on August 1, 1986. On August 8, 1986, Margaret Spinelli, tax collector for Shade Township, filed exceptions to the sheriff's distribution, seeking payment to Shade Township for county, township and school taxes for 1986 in the amount of $1,811.45.

At issue is whether a claim for outstanding property taxes, made subsequent to sheriff's sale but prior to distribution, may be satisfied from sale proceeds. We hold the exception of the tax collector for Shade Township must be sustained.

The parties agree that the county, township and school taxes were liens on the property at the time of sheriff's sale[1] and that said liens were divested by the sheriff's sale, all in accord with the act of May 22, 1895, P.L. 111, 53 P.S. §7104, which provides that if the purchase money at a judicial sale equals the amount of taxes which are a lien on the property, the lien of those taxes "shall be divested" by the judicial sale.

The question in this case arises from the second section of the aforementioned act, recorded at 53

---

1. See 53 P.S. §§7102, 7103.

P.S. §7105, which provides as follows:

"It is hereby made the duty of any officer having taxes for collection against any land advertised to be sold, or of the county commissioners before the taxes have been certified for collection, to give notice to the officers or person selling any such land of the amount of taxes against the same, and the officer selling such land shall pay said taxes out of the proceeds arising from the sale first after payment of the costs of sale."

We shall adopt the reasoning of *Berks County Trust Co. v. Wymbs*, 53 D.&C.2d 115 (1945), which states:

"Taxes levied and assessed on real property . . . are due and payable out of the proceeds of the sale although they were omitted from the statement of taxes due presented to the sheriff at the time of the sale, where a statement is duly filed by the tax collector prior to the distribution of the proceeds of the sale, and the sheriff will be ordered to pay the taxes out of the proceeds. . . ."

Exceptant, Shade Township tax collector, cites *Griggs v. Benson et al.*, 29 Dist. R. 853 (Montgomery County Common Pleas Court, 1919) which, after quoting section 2 of the act of 1985, 53 P.S. §7105, states at 855-856:

"The sheriff sells in obedience to the command of the writ, and it serves as his protection so far as the sale is concerned. Distribution of the proceeds is an entirely different responsibility, and it cannot arise until after the sale is over. Mortgages, judgments and other liens that have been recorded or filed appear upon his certified searches. As to them there is no particular difficulty in making up the schedule. He has notice of both their existence and prima facie amount, and the lien of those that are discharged by the sale is merely transferred to the pro-

ceeds after payment of costs. But taxes lawfully levied and assessed against the premises sold are, if unpaid, also now a lien. There is, however, nothing on the record to inform him as to the fact of their nonpayment or the amount due. The collector may not even intend to look for payment out of the fund. The second section, which was passed for his protection alone, therefore, makes it the duty of the collector to give his notice of their amount if it is desired that they be paid out of the proceeds. As to them, it is not their lien, but the notice, that imposes liability upon him. This notice is not expressly required to be in writing, and nothing is said in the act as to when it shall be given. This section of the act, not being for the protection of the purchaser or of the execution creditor, its reasonable construction is, therefore, that, unless the sheriff receives the notice before distribution, he cannot be called upon for payment, notwithstanding the taxes were a lien and discharged by the sale, and it makes no difference whether the notice is received before, at, or after the sale, so long as it is given before the money is paid out."

The court continued with its analysis:

"The construction does not affect the purchaser at all; it gives the sheriff the protection contemplated by the act; it facilitates the collection of taxes which belong to the public, and to some extent, at least, it saves the latter from loss incident to the delay or indifference of the collector. Nor does it prejudice the execution creditor, who is presumed to know that, in the circumstances, the taxes are prior in lien to his mortgage. He can easily ascertain before the sale the facts as to their payment or nonpayment, and, in the latter contingency, their amount, and then bid at the sale accordingly. It imposes no new duties on the sheriff. The title to, the

second preamble in, and the second section of the act, when all carefully considered together, clearly indicate that it was not passed for the purpose of enabling parties intelligently to bid at such a sale, but it relates to the proper distribution of the proceeds after the sale is made. If the Legislature had intended that the notice should be given before or at the sale, it could easily have said so. In the absence of any such express provision, it seems to us that it is too narrow to read such requirement into the act by judicial construction, when it is not necessary to do so to accomplish its purpose."

The court recognizes that a number of cases, cited by plaintiff, hold that failure of a tax collector to file claims for unpaid taxes with the sheriff prior to a sheriff's sale discharges said lien. See *Harrisburg Trust Co. v. Romberger et al.,* 135 Pa. Super. 394 (1939); *In re Divestiture of Tax Liens,* 93 Pittsburgh Legal Journal 91 (1945); *Scranton Poor District v. Goodman,* 42 Lackawanna Jurist 66 (1940).

However, we find that an exception period prior to distribution is enacted for the very purpose of correcting distribution errors, miscalculations, and a variety of other shortcomings. Otherwise, that statute would direct the sheriff to immediately proceed with distribution of proceeds following sale. We agree with the sheriff's solicitor that, as a practical matter, notices of taxes due should be presented to the sheriff prior to sale so that the purchase price is sufficient to divest all outstanding liens. However, we hold that a local taxing body should not lose outstanding taxes where a claim is filed prior to distribution. While it may be prudent to adopt a local rule stating that all taxes must be included of record prior to sheriff's sale or that the sheriff must contact all taxing bodies prior to sale, these requirements do not presently exist. We find, therefore, that where

notice of taxes levied, assessed and due is given before distribution but following sheriff's sale, it shall be mandatory upon the sheriff to pay these taxes from sale proceeds.

## ORDER

Now, this March 23, 1987, the exceptions to the sheriff's schedule of distribution, filed by Margaret Spinelli, tax collector for Shade Township, are sustained. The sheriff is directed to amend his schedule of distribution to provide for payment of $1,811.45 (plus interest) (held in escrow by an order of this court, dated August 12, 1986) to the tax collector of Shade Township.